Electronically Filed
Intermediate Court of Appeals
CAAP-18-0000019
03-DEC-2021
07:56 AM
Dkt. 125 SO

NO. CAAP-18-0000019

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAIʻI

JANE K. HIGUCHI, Claimant-Appellee-Appellee,
v.
OTAKA, INC., Employer-Appellant-Appellee,
and
HAWAII INSURANCE GUARANTY ASSOCIATION,
Insurance Carrier-Appellant-Appellee,
and
SPECIAL COMPENSATION FUND,
Respondent-Appellee-Appellant

APPEAL FROM THE LABOR AND INDUSTRIAL RELATIONS APPEALS BOARD
(CASE NO. AB2014-409 and DCD NO. 2-96-02764)

**SUMMARY DISPOSITION ORDER**
(By:  Hiraoka, Presiding Judge, Nakasone and McCullen, JJ.)

Respondent-Appellee-Appellant Special Compensation Fund, Department of Labor and Industrial Relations, State of Hawaiʻi (**SCF**) appeals from the Decision and Order entered by the Labor and Industrial Relations Appeals Board (**LIRAB**) on December 12, 2017 (**2017 D&O**).  The LIRAB held the SCF liable for 100% of permanent partial disability (**PPD**) benefits awarded to Claimant-Appellee-Appellee Jane **Higuchi**, net of PPD benefits previously paid by Higuchi's employer and its workers' compensation insurer (collectively referred to as **"Employer"**) pursuant to two settlement agreements.  For the reasons explained below, we affirm the 2017 D&O.

In 1984 Higuchi injured her left knee while working. She received workers' compensation benefits from Employer. In 1995 Higuchi injured her right knee while doing yard work; she did not receive workers' compensation benefits for that injury.

On January 28, 1996, Higuchi injured both knees while working for the same employer. Higuchi received workers' compensation benefits from Employer. By letter dated April 4, 1997, Employer notified the Disability Compensation Division (**DCD**) that the SCF should be joined in the workers' compensation case.[1] The SCF appeared in the case by letter dated April 16, 1997.

On January 5, 1999, Higuchi and Employer executed a "Stipulation and Settlement Agreement and Order" (**1999 Settlement**). Employer agreed that Higuchi sustained 20% PPD of her legs, for which Employer paid Higuchi a lump sum. Employer agreed to continue to pay for medical care, services, and supplies reasonably needed because of the 1996 injury. Employer also agreed that Higuchi retained her right to reopen her

---

[1] Hawaii Revised Statutes (**HRS**) § 386-33 (Supp. 1995) provides, in relevant part:

> **§386-33 Subsequent injuries that would increase disability.** (a) Where prior to any injury an employee suffers from a previous permanent partial disability already existing prior to the injury for which compensation is claimed, and the disability resulting from the injury combines with the previous disability, whether the previous permanent partial disability was incurred during past or present periods of employment, to result in a greater permanent partial disability . . . then weekly benefits shall be paid as follows:
>
> > (1) In cases where the disability resulting from the injury combines with the previous disability to result in greater permanent partial disability the employer shall pay the employee compensation for the employee's actual permanent partial disability but for *not more than one hundred four weeks*; the balance if any of compensation payable to the employee for the employee's actual permanent partial disability shall thereafter be paid out of the *special compensation fund*[.]

(Emphasis added.)

workers' compensation claim. The 1999 Settlement was approved by the DCD on January 25, 1999. Employer did not seek contribution from the SCF. The SCF was not a party to the 1999 Settlement.

Higuchi continued receiving treatment for her knees, including arthroscopic surgery on her right knee in September 2000. On January 3, 2003, Higuchi and Employer executed a "Supplemental Stipulation and Settlement Agreement" (**2003 Settlement**). Employer agreed that Higuchi sustained 52% PPD of her legs, and paid Higuchi an additional 32% lump sum to compensate Higuchi for PPD and disfigurement in excess of the 20% PPD lump sum payment under the 1999 Settlement (52% - 20% under the 1999 Settlement = 32%).[2] Employer also agreed to continue to pay for medical care, services, and supplies reasonably needed because of the 1996 injury, and again agreed that Higuchi retained her right to reopen her workers' compensation claim. The 2003 Settlement was approved by the DCD on January 30, 2003. Employer did not seek contribution from the SCF. The SCF was not a party to the 2003 Settlement.

Higuchi continued receiving treatment for her knees. Her left knee was replaced in February 2004. Her right knee was replaced in September 2009. By letter dated November 5, 2010, orthopedic surgeon Peter E. **Diamond** gave Higuchi a total PPD rating of 74%, with a portion due to pre-existing factors.

Higuchi made a claim for additional PPD benefits. Employer requested apportionment with SCF, based upon Dr. Diamond's report attributing a portion of the PPD rating to pre-existing conditions. The SCF objected, arguing that Employer had accepted full liability for PPD by voluntarily paying more than 104 weeks of benefits (the employers' requirement under HRS § 386-33(a)(1)) under the 1999 and 2003 settlements.

---

[2] In addition to the supplemental PPD payment, Employer paid Higuchi $54,378.12 in temporary total disability (**TTD**) benefits for various periods between May 1999 and October 2002. Liability for TTD benefits is not apportionable with the SCF under HRS § 386-33.

On December 30, 2011, the DCD issued a decision and order (**2011 DCD Decision**). The DCD found that Higuchi sustained total PPD of 82% and also awarded her $2,000 for disfigurement from surgical scars. The DCD agreed with the SCF that the 1999 and 2003 PPD settlements barred Employer from re-litigating pre-existing PPD against the SCF. The DCD held Employer solely liable for paying benefits for the additional 30% PPD (82% - 20% under the 1999 Settlement - 32% under the 2003 Settlement = 30%) for an additional 124.0898 weeks of benefits.

Employer appealed to the LIRAB. The LIRAB issued a decision and order on October 2, 2013. The LIRAB ruled that the DCD erred in denying Employer's request to join the SCF. The case was remanded for the DCD to determine the amount of the SCF's liability.

The DCD issued a supplemental decision on December 8, 2014. The DCD credited Dr. Diamond's report apportioning Higuchi's PPD to pre-exising conditions. The DCD ruled that the SCF must pay the PPD benefits awarded under the 2011 DCD Decision (124.0898 weeks of additional benefits) in excess of 104 weeks under HRS § 386-33(a)(1) (see note 1). Thus the SCF was found liable for 20.0898 weeks of PPD benefits.

Employer again appealed to the LIRAB. On December 12, 2017, the LIRAB issued the 2017 D&O that is the subject of this appeal. The LIRAB found, and the parties do not dispute, that: Employer paid Higuchi a total of 212.876 weeks of PPD benefits under the 1999 and 2003 settlements; and the 2011 DCD Decision awarded Higuchi an additional 122.8237 weeks of PPD benefits.[3] The LIRAB found that Employer waived reimbursement from the SCF for any benefits paid under the 1999 and 2003 settlements,[4] but did not waive its claim for apportionment with the SCF of the

---

[3]    There appears to be a discrepancy between the 2011 DCD Decision and the LIRAB's finding in the 2017 D&O, but SCF does not contest the LIRAB's finding.

[4]    Employer has not cross-appealed from this finding.

benefits awarded by the 2011 DCD Decision.  The LIRAB apportioned all of the liability for the benefits awarded by the 2011 DCD Decision to the SCF.  This appeal by the SCF followed.

The SCF contends that the LIRAB erred: **(1)** by failing to apply res judicata; **(2)** by failing to apply estoppel; **(3)** by making inconsistent findings as to waiver; and **(4)** by concluding that Employer did not waive its right to apportionment under HRS § 386-33.

Appellate review of LIRAB decisions is provided for by HRS § 386-88 and governed by HRS § 91-14(g).  The LIRAB's findings of fact are reviewed under the clearly erroneous standard.  Nakamura v. State, 98 Hawaiʻi 263, 267, 47 P.3d 730, 734 (2002).  The LIRAB's conclusions of law are reviewed under the right/wrong standard.  Id.  The LIRAB's decisions involving mixed questions of fact and law are reviewed under the clearly erroneous standard because the conclusion is dependent upon the facts and circumstances of the particular case.  Id.

**1.    Employer's claim that the SCF was liable for some portion of Higuchi's PPD benefits was not barred by res judicata.**

The LIRAB concluded:

> The Board also rejects SCF's arguments that res judicata and collateral estoppel apply with regard to the 1999 and 2003 stipulations.  Both stipulations were agreements between [Higuchi] and Employer and did not include litigation or adjudication of the issue of apportionment.

A party asserting res judicata — claim preclusion — must prove that: (1) there was a final judgment on the merits; (2) both parties are the same or are in privity with the same parties in the original suit; and (3) *the claim decided in the original suit is identical with the one presented in the action in question*.  Priceline.com, Inc. v. Dir. of Tax'n, 144 Hawaiʻi 72, 82, 436 P.3d 1155, 1165 (2019).  In this case Employer did not make a claim against the SCF until the proceeding that resulted in this

appeal. Even if the director of labor's approval of the 1999 and 2003 settlements is deemed a final judgment on the merits (an issue we do not decide),[5] apportionment with the SCF was not an issue presented to the director by either the 1999 Settlement or the 2003 Settlement. Employer agreed to pay more than 104 weeks of PPD benefits to compromise Higuchi's PPD claims, subject to reopening if her disability increased. Employer's claim that the SCF is liable for some portion of Higuchi's PPD benefits awarded by the 2011 DCD Decision was not barred by res judicata.

> **2. Employer was not estopped from pursuing a claim against the SCF for PPD benefits awarded under the 2011 DCD Decision.**

The LIRAB concluded:

> The Board also rejects SCF's argument that Employer is estopped from raising its claim for apportionment. There is no evidence that SCF detrimentally relied on Employer's payment of PPD, or that any reliance, if present, was reasonable.

The SCF's opening brief argues both collateral estoppel and judicial estoppel, which are separate doctrines.

A party asserting collateral estoppel — issue preclusion — must prove that: (1) the issue decided in the prior adjudication is identical to the one presented in the action in question; (2) there was a final judgment on the merits; (3) the issue decided in the prior adjudication was essential to the final judgment; and (4) the party against whom collateral estoppel is asserted was a party or in privity with a party to the prior adjudication. Dorrance v. Lee, 90 Hawaiʻi 143, 149, 976 P.2d 904, 910 (1999).

In this case the issue of whether the SCF was liable for any portion of the 1999 or 2003 settlements was never

_____

[5] But see PennyMac Corp. v. Godinez, 148 Hawaiʻi 323, 327, 474 P.3d 264, 268 (2020) ("By definition, the doctrine of res judicata only applies to new suits: It is inapplicable in a continuation of the same suit.") (citations omitted). In this case all of the PPD benefits at issue were paid, or were due, because of the same 1996 work injury to Higuchi.

litigated.  The SCF was not a party to either settlement, and the director of labor's approval of those settlements did not adjudicate any issue of apportionment between Employer and SCF. Nor has Employer sought reimbursement from the SCF of any amounts paid pursuant to the 1999 or 2003 settlements.  The LIRAB did not err by refusing to apply collateral estoppel.

A party asserting judicial estoppel must prove that: (1) the party to be estopped is asserting a position that is factually incompatible with a position taken in a prior judicial or administrative proceeding; (2) the prior inconsistent position was accepted by the tribunal; and (3) the party to be estopped is taking inconsistent positions intentionally for the purpose of gaining unfair advantage.  <u>Goran Pleho, LLC v. Lacy</u>, 144 Hawaiʻi 224, 240 n.15, 439 P.3d 176, 192 n.15 (2019).

In this case Employer never took the position that the SCF was <u>not</u> liable for any portion of the 1999 or 2003 settlements; Employer agreed to pay the settlement amounts itself, to compromise a dispute with Higuchi over PPD benefits. In approving the settlements, the director of labor could not have accepted a position Employer never took.  And Employer's settlement of Higuchi's prior PPD claims without seeking the participation of the SCF is not inconsistent with Employer's claim that the SCF is liable for some portion of Higuchi's PPD benefits ***awarded by the 2011 DCD Decision***.  The LIRAB did not err by refusing to apply judicial estoppel.

### 3. The LIRAB did not make inconsistent findings concerning waiver.

The LIRAB made the following findings of fact:

> 11.   The Board finds no evidence that Employer intended to waive a right to claim apportionment against the SCF.
>
> . . . .
>
> 13. The Board finds that Employer's conduct of entering into stipulation and settlement agreements with only Claimant in 1999 and 2003, while the SCF was a party, amounted to conduct that warrants an inference of an

> intentional relinquishment of its right to claim apportionment or reimbursement for the 212.876 weeks of PPD, as stipulated with Claimant [in the 1999 and 2003 settlements].
>
> 14.   The Board finds no evidence of conduct [by Employer] warranting an inference of an intentional relinquishment of its right to claim apportionment with or reimbursement from SCF ***for the additional PPD awarded in the Director's December 30, 2011 decision.***
>
> . . . .
>
> The Board found that Employer's conduct amounted to an inference that Employer waived its right to apportionment for the amounts paid to Claimant ***pursuant to the 1999 and 2003 stipulation[s].***
>
> . . . .
>
> There is no evidence that Employer waived or otherwise relinquished its right to claim apportionment of PPD against the SCF ***for the additional amounts*** awarded by the Director.

(Emphasis added.)

Waiver is generally defined as "an intentional relinquishment of a known right, a voluntary relinquishment of rights, and the relinquishment or refusal to use a right." Coon v. City & Cnty. of Honolulu, 98 Hawaiʻi 233, 261, 47 P.3d 348, 376 (2002) (citation omitted).  "While the question whether a valid waiver exists is generally a question of fact, when the facts are undisputed it may become a question of law." Id. at 261-62, 47 P.3d at 376-77 (cleaned up).  The LIRAB's affirmative findings are supported by substantial evidence in the record, and there is nothing in the record to contradict its negative findings.  The LIRAB did not err by finding that although Employer waived its right to seek contribution from the SCF for amounts paid under the 1999 and 2003 settlements, it never waived the right to seek contribution from the SCF for the additional PPD benefits awarded by the 2011 DCD Decision.

> **4.    The LIRAB did not err by concluding that
>         Employer did not waive its right to
>         apportionment under HRS § 386-33.**

The LIRAB concluded:

> The Board also rejects SCF's argument that Employer
> waived its claim for apportionment.  The Board found no
> evidence that Employer intended to waive a right to claim
> apportionment against the SCF.

As discussed above, Employer did not waive its right to seek
apportionment with the SCF under HRS § 386-33 for PPD benefits
due under the 2011 DCD Decision.  It was undisputed that Employer
paid more than 104 weeks of PPD benefits to Higuchi before the
2011 DCD Decision was issued.  The LIRAB did not err in holding
the SCF liable for all benefits awarded by the 2011 DCD Decision.

For the foregoing reasons, we affirm the Decision and
Order entered by the LIRAB on December 12, 2017.

DATED:  Honolulu, Hawaiʻi, December 3, 2021.

On the briefs:

Frances E. H. Lum,
Herbert B.K. Lau,
for Respondent-Appellee-
Appellant.

J. Thomas Weber,
Steven L. Goto,
for Employer-Appellant-Appellee
and Insurance Carrier-Appellant-
Appellee.

/s/ Keith K. Hiraoka
Presiding Judge

/s/ Karen T. Nakasone
Associate Judge

/s/ Sonja M.P. McCullen
Associate Judge